B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Christopher Dee Cotton<br>Allison Hedrick Cotton | Wells Fargo Bank, N.A. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Theodore O. Bartholow, III - Kellett & Bartholow PLLC<br>11300 N. Central Expy., Suite 301, Dallas, TX 75243   214-696-9000 | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

1) Violation of Fed. R. Bankr. P. 3002.1; 2) Violation of Automatic Stay (11 U.S.C. 362); 3) Abuse of Process (11 U.S.C. 105);
4) Contempt; 5) Fraud on the Court; 6) Breach of Contract; 7) North Carolina Unfair Deceptive Trade Practices Act

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☑ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☐ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>    (other than domestic support)<br>☐ 65-Dischargeability - other |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☑ 72-Injunctive relief – other |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☑ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,<br>    actual fraud<br>☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause<br><br>**Other**<br>☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>    if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☐ Check if this case involves a substantive issue of state law | ☑ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| **Other Relief Sought** | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Christopher Dee Cotton and Allison Hedrick Cotton | | BANKRUPTCY CASE NO.<br>14-30287 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Western District of North Carolina | | DIVISION OFFICE<br>Charlotte | NAME OF JUDGE<br>Beyer |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br><br>06/07/2017 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Theodore O. Bartholow, III ("Thad") | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHRISTOPHER DEE COTTON | § | CASE No. 14-30287 |
| ALLISON HEDRICK COTTON | § | CHAPTER 13 |
| | § | |
| DEBTORS | § | |
| | § | |
| CHRISTOPHER DEE COTTON | § | |
| AND | § | |
| ALLISON HEDRICK COTTON, | § | ADVERSARY NO. _____ |
| ON BEHALF OF THEMSELVES AND ALL | § | |
| OTHERS SIMILARLY-SITUATED, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK, N.A. | § | |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFFS' ORIGINAL CLASS COMPLAINT
## AND APPLICATION FOR INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs Christopher Dee Cotton and Allison Hedrick Cotton ("Plaintiffs" or the "Cottons"), on behalf of themselves and all others similarly-situated, file this adversary proceeding against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") seeking relief for themselves and all other consumer bankruptcy debtors who have filed Chapter 13 bankruptcy cases in the Western District of North Carolina and elsewhere nationwide, who have been subjected to Wells Fargo's unlawful practice of filing mortgage payment change notices ("PCNs") pursuant to Federal Rule of Bankruptcy Procedure 3002.1(b), which provide that the class members' monthly mortgage payments are to be changed as a result of purported "trial" loan modifications that

neither the debtors, the attorney for the debtors, or the Courts in which such debtors' bankruptcy cases are pending have previously approved, a/k/a *stealth modifications*.

## I.
## INTRODUCTION

1.      Plaintiffs file this case on behalf of themselves and all other similarly-situated consumer debtors who have filed for bankruptcy protection under the provisions of Chapter 13 of Title 11 of the United States Code, commonly known as the United States Bankruptcy Code (11 U.S.C. § 1301 et seq.) in order to redress and enjoin Wells Fargo's improper use of the Bankruptcy Code and Rules to force debtors into mortgage loan modifications that neither the debtors (Plaintiffs and all other similarly-situated Chapter 13 debtors), the attorney for the debtors, or the bankruptcy court presiding over such debtors' cases, have requested or approved.

2.      Wells Fargo's practices described herein constitute a virtual hijacking of the administration of these debtors' Chapter 13 bankruptcies. Debtors' mortgages that were being cured and maintained as contemplated by § 1322(b)(5) of the Bankruptcy Code and as set forth in the courts' orders confirming these debtors' Chapter 13 plans of reorganization are being thrown into default without prior court approval, and worse, *without the debtors' prior knowledge or consent.*

3.      Thus, it is important to clarify what this case is *not* about: Plaintiffs in this case do not seek to prevent themselves or any other Chapter 13 debtor from beginning a voluntary trial mortgage modification program in order to obtain a final mortgage loan modification that such debtor has requested, understands, and wants, and which has been disclosed to and approved by their Chapter 13 Trustees and bankruptcy courts through proper, transparent disclosures and procedures, as the Bankruptcy Code and Rules require.

4.      Rather, what has happened repeatedly to the Cottons in this case is the antithesis

of what is supposed to happen with mortgage modifications in bankruptcy. What ought to happen is that the debtors (through counsel) and the mortgage servicer (Wells Fargo) should first communicate about the proposed modification process and reach an understanding regarding the general framework for any potential final modification before agreeing to a proposed trial modification payment. Then, the trial modification payment ought to be disclosed to and approved by the court *before it becomes effective*, after the debtors have amended their schedules and Chapter 13 plan to account for the financial change in circumstance resulting from such trial modification payment. At that point, the debtors would proceed to make the disclosed and court-approved trial modification payments. Finally, once the trial modification payments are complete, the debtors and the mortgage servicer would then seek Court approval prior to formally entering into a final mortgage modification agreement, which would again likely require amendment of the debtors' Chapter 13 plan and schedules to reflect any difference between the amount of the trial modification payments and the final modification payment going forward and provide for any changes to the treatment of the mortgage servicer's claim (for example, this would frequently entail removal of pre-petition arrearages from the debtors' Chapter 13 plan because avaerages are typically capitalized in the final mortgage modification agreement).

5.     In the Chapter 13 context, disclosing and obtaining bankruptcy court approval of both the trial modification terms and the final modification agreement is critical to the effective and fair functioning of the goals and purposes of the process established by Congress when it enacted Chapter 13 of the Bankruptcy Code.

6.     The very concept of a Chapter 13 plan of "reorganization" is to provide a tightly-monitored, court-administered process that allows consumer debtors the opportunity to cure

certain kinds of pre-bankruptcy obligations (like mortgage and automobile arrearages, and pre-petition income tax debts, among others) while also devoting the value of all of their non-exempt assets and their post-petition disposable income toward payment of such obligations, and, to the greatest extent possible, to pay other lower-priority pre-bankruptcy debts, such as general unsecured debts (e.g. credit cards, payday loans, deficiencies, etc.).

7.       Thus, a Chapter 13 debtor's post-petition earnings are property of the debtor's bankruptcy estate, and are therefore routinely monitored by their Chapter 13 Trustees so that excessive income tax refunds, material increases in wage income, as well as inheritances and other financial windfalls *and other changes of circumstances* can be grounds for modification of debtors' Chapter 13 plans to increase the dividends and/or speed with which the debtors' creditors' pre-petition claims are paid.

8.       One material change of circumstance, therefore, can be a mortgage modification resulting in a meaningful change in a debtor's monthly mortgage payment obligation, which would impact the amount of funds available to the Chapter 13 Trustee to pay other claims pursuant to the Bankruptcy Code's requirements and the debtor's confirmed Chapter 13 plan.

9.       In the Western District of North Carolina, as is the case in many other so-called "conduit" jurisdictions, i.e., jurisdictions where the Chapter 13 Trustee is responsible for making borrowers' ongoing mortgage payments, as well as making payments to debtors' mortgage creditors to cure any pre-petition mortgage arrearages, when the Trustee receives notification that a debtor's monthly mortgage payment has changed, the result is that the Chapter 13  Trustee recalculates the allocation of disbursements of debtor's plan payments (funds paid to the Trustee by the debtors pursuant to their Chapter 13 plan) to the debtor's creditors depending on the nature

of the change in the mortgage payment. Consequently, in most cases (where the debtor's creditors holding pre-petition unsecured debts are slated to receive less than 100% of their allowed claims), when the debtor's post-petition mortgage payment goes down, the debtors' Chapter 13 plan payment to the Trustee stays the same, but the amount that the Chapter 13 Trustee pays to unsecured creditors increases by the amount of the reduction in the debtors' mortgage payment.

10.    Wells Fargo's practice of filing improper and unauthorized stealth modification "Payment Change Notices" (PCNs) turns the intended purpose of Rule 3002.1 of the Federal Rules of Bankruptcy Procedure on its head: this practice breaches and destroys the debtors' mortgage contract and it destroys the Chapter 13 Trustee's administration of the plan.

11.    The point of 3002.1 is to require mortgage servicers to disclose post-petition expenses and legitimate post-petition mortgage payment changes based on interest rate changes and escrow requirements. The rule was enacted to ensure that debtors have the information they require to be able to make their post-petition payments in the proper amount so that they can emerge from their Chapter 13 bankruptcies with current mortgage loan accounts.

12.    Wells Fargo's 3002.1 notices containing stealth modifications actively undermine this process by indicating (falsely) that the contractual payment has changed when it has not. When the stealth modification PCNs indicate a payment decrease, its puts the Plaintiffs into contractual default, while producing an overpayment to the Plaintiffs' unsecured creditors. On the other hand, an unauthorized increase could render the plan infeasible or result in underpayment of unsecured claims.

## II.
## JURISDICTION AND VENUE

13.    Jurisdiction of this action arises under 28 U.S.C. § 1334 and §§157(b) and (c).

PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT                    5

Plaintiffs assert claims against Defendant for violation of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district. Plaintiffs filed for bankruptcy protection in this district, Defendant participated in Plaintiffs' bankruptcy in this district, and Defendant transacts business in this district.

15.     Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiffs state that to the extent the Court determines that any portion of this complaint is non-core, Plaintiffs consent to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.  Further, to the extent that any court determines that the Bankruptcy Court does not have the authority to enter a final judgment on any cause of action set forth herein, Plaintiffs request that the Bankruptcy Court issue a report and recommendation for a judgment to the United States District Court for the Western District of North Carolina on any such cause of action.

### III.
### BANKRUPTCY COURT AUTHORITY TO ADJUDICATE
### THIS MATTER AS A NATIONWIDE CLASS ACTION

16.     28 U.S.C. § 1334(a) confers upon district courts the original and exclusive jurisdiction of all cases under Title 11.

17.     28 U.S.C. § 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under Title 11."

18.    28 U.S.C. § 157(a) authorizes district courts to refer cases falling within the ambit of § 1334 to bankruptcy judges for that district.

19.    The Order of Reference applicable in the Western District of North Carolina provides that "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges for this district." *In re Standing Order of Reference Re: Title 11*, 3:14mc44 (W.D. N.C. Apr. 14, 2014).

20.    Plaintiffs' claims invoke substantive rights created by the Bankruptcy Code and Rules and therefore fall within the Court's "arising under" jurisdiction. *See Jones v. Atlas Acquisitions, LLC,* 16-03235, Order Denying Atlas Acquisitions LLC and Avi Schild's Motion to Dismiss Plaintiff's Class Certification Claims (Bankr. S. D. Tex. May 19, 2017) (Bohm) **Exhibit A**. *See also*, *Cano v. GMAC Mortgage Corp. (In re Cano)*, 410 B.R. 506 (Bankr. S.D. Tex. 2009); *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000).

21.    This Court also has "arising in" jurisdiction in this case because Plaintiffs' claims can only arise in bankruptcy court.

22.    There is no question that bankruptcy courts are permitted to handle class actions in adversary proceedings. Fed. R. Bankr. P. 7023 incorporates Fed. R. Civ. P. 23, which authorizes courts to certify class actions. *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010); *In re Tate*, 253 B.R. 653, 663 (Bankr. W.D. N.C. 2000).

23.    Because the District Court for the Western District of North Carolina has jurisdiction over a nationwide class of debtors, this Court, operating as a unit of the District Court for the Western District of North Carolina, has the authority to adjudicate all matters that fall within the District Court's bankruptcy jurisdiction. 28 U.S.C. § 1334. Thus, based on the language

set forth in 28 U.S.C. §§ 1334 and 157, and *In re Standing Order of Reference Re: Title 11*, 3:14mc44 (W.D. N.C. Apr. 14, 2014), this Court may exercise jurisdiction over a nationwide class of debtors, including the class for whom Plaintiffs have filed this complaint, provided Plaintiffs satisfy all other requirements of Rule 23 for certification of a class action.

## IV.
## PARTIES

24.     Plaintiffs Christopher Dee Cotton and Allison Hedrick Cotton are residents of the Western District of North Carolina. The Cottons are also the debtors in *In re Christopher Dee Cotton and Allison Hedrick Cotton*, Chapter 13 Bankruptcy Case No. 14-30287, filed in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division.

25.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a foreign limited liability company.  Wells Fargo may be served with process through its registered agent, Corporation Service Company, at 327 Hillsborough Street, Raleigh, North Carolina 27603.

## V.
## FACTUAL ALLEGATIONS SPECIFIC TO THE NAMED PLAINTIFFS

26.     On February 24, 2014, the Cottons filed their voluntary petition for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code.  Chapter 13 Case No. 14-30287, Docket No. 1 (hereinafter, "Chapter 13 Docket No. [x]").

27.     In their schedules, the Cottons listed their home as real property valued at $209,439.00, which was secured by a mortgage loan with a balance of $171,214.84 accruing interest at the annual rate of 4.875%, which loan was serviced by Defendant Wells Fargo Home Mortgage. Chapter 13 Docket No. 1.

28.    Accordingly, based on the amounts in their schedules, the Cottons had approximately $38,224.16 in equity in their home when they filed their Chapter 13 bankruptcy on February 24, 2014.

29.    The Cottons were current on their mortgage payments to Wells Fargo when they filed their bankruptcy petition in this case, and the Cottons have remained current on their mortgage by making all of their Chapter 13 plan payments throughout the pendency of their case, except to the extent that Wells Fargo's illegal stealth modifications have caused the Chapter 13 Trustee to pay less than their contractual payment amount, which resulted in manufactured defaults that were not the Cottons' fault.

30.    The Cottons' mortgage loan is based on a 20-year note bearing interest at 4.875%, with the first payment due on January 1, 2010.  Thus, on the petition date (February 24, 2014), the Cottons had just under sixteen years of monthly mortgage payments remaining on their mortgage loan.

31.    The Cottons scheduled no known unsecured "priority" claims when they filed their Chapter 13 bankruptcy.  Chapter 13 Docket No. 1.

32.    The Cottons' Chapter 13 Plan, which was confirmed by order of the Bankruptcy Court on May 14, 2014, proposed that the Cottons would pay $3,600.00 per month for 60 months, inclusive of the Cottons' monthly mortgage payments, from which amount the Chapter 13 Trustee would disburse monthly mortgage payments directly to Wells Fargo, which payments are commonly described as "conduit" payments.  *See* Chapter 13 Docket Nos. 5, 12, 14, 17.

33.    On February 28, 2014, Matthew Underwood filed a notice of appearance in the Cottons' case, as counsel for Wells Fargo.  Chapter 13 Docket No. 6.

34.   On March 7, 2014, the United States Bankruptcy Court sent the Cottons' creditors notice of the Section 341 meeting of creditors ("341 meeting") to be held in the Cottons' Chapter 13 case.   Notice of the 341 meeting was sent to Wells Fargo by first class mail to three different physical addresses and electronically to one electronic notice address.   The Bankruptcy Court's 341 meeting notice provided that the deadline for non-governmental creditors to file a proof of claim was July 9, 2014.   Chapter 13 Docket No. 10.

35.   On April 14, 2014, the Cottons' bankruptcy counsel filed a proof of claim (Claim No. 15) on behalf of Wells Fargo, which listed the amount of Wells Fargo's pre-petition claim as $171,214.84 and did not include any amount owed for pre-petition arrears.   Claim 15 filed by the Cottons' bankruptcy counsel included Local Form 14 ("Addendum to Chapter 13 Proof of Claim for Real Property Creditor [Conduit Mortgages]") as an attachment, which indicated that the Cottons' post-petition mortgage payment was $1,398.40, due on the first of each month.   Chapter 13 Claims Register, Claim 15.

36.   On May 2, 2014, Wells Fargo filed a proof of claim (Claim No. 18) on its own behalf based on the Cottons' mortgage loan, which listed the amount of its secured claim as $171,631.37 and provided for a pre-petition arrearage claim of $539.56 in alleged pre-petition escrow shortages. Chapter 13 Claims Register, Claim 18-1 Part 2.

37.   Wells Fargo's May 2, 2014 Claim 18 included a Local Form 14 ("Addendum to Chapter 13 Proof of Claim for Real Property Creditor [Conduit Mortgages]") as an attachment, which provided that the Cottons' post-petition monthly payment amount was $1,402.08, due allegedly on "03/01/2014," a date that preceded the proof of claim by two months.[1]

---

[1] The Chapter 13 Trustee's disbursement records indicate that, beginning on May 30, 2014 and continuing through March 21, 2015, the Chapter 13 Trustee made conduit mortgage payments to Wells Fargo based on the monthly

38.     As of the date of this Complaint, Wells Fargo has filed eight PCNs pursuant to Fed. R. Bankr. P. 3002.1(b) ("Rule 3002.1") in the Cottons' Chapter 13 bankruptcy case with respect to the Cottons' loan that is the subject of Wells Fargo's Claim 18.  Three of Wells Fargo's PCNs have been for unauthorized proposed trial modification payments (a/k/a "stealth mods"). The following table summarizes the nature of the payment changes contained in each of the Wells Fargo PCNs:

| PCN Date | Reason for PCN | Prev. Pmt Amount | New Pmt Amount | Effective Date | No. of payments Disbursed by Trustee In PCN Pmt Amount |
|---|---|---|---|---|---|
| 5/2/14 (POC) | Post-petition pmt amount in Wells Fargo Proof of Claim | n/a | $1,402.08 | 3/1/14 | 11 |
| 3/25/15 | Escrow change | $1,402.08 | $1404.45 | 5/1/15 | 8 |
| 11/16/15 | "Stealth" Mod (undisclosed and unauthorized "trial" modification payment) | $1,404.45 | $1,270.48 | 1/1/16 | 4 |
| 3/29/16 | "Escrow shortage Dropoff" | $1,404.45[2] | $1,403.00 | 5/1/16 | 1 |
| 4/27/16 | Escrow change | $1,404.45[3] | $1,398.58 | 6/1/16 | 6 (last pmt 10/31/16[4]) |
| 6/27/16 | "Stealth" Mod | $1,398.58 | $1,253.39 | 8/1/16 | None |

payment amount of $1402.08, as set forth in Wells Fargo's claim 18, not the $1,398.40 monthly payment amount provided in Claim 15 filed by the Cottons' bankruptcy counsel on behalf of Wells Fargo.

[2] Amount listed as "current"/previous payment amount on PCN (disregarding payment change indicated by the November 11, 2015 stealth mod PCN).

[3] Amount listed as "current"/previous payment amount on escrow account disclosure statement attached to PCN (disregarding payment change indicated by the 3/29/16 PCN).

[4] Upon information and belief, the Chapter 13 Trustee has been reserving funds for Plaintiffs' monthly mortgage payments since October 31, 2016, when the issues presented in this complaint were raised with the Court in connection with Plaintiffs' objection to Wells Fargo's October 13, 2016 stealth modification.

| 10/13/16 | "Stealth" Mod | $1,398.58 | $1,251.09 | 12/1/16 | None |
| 12/1/16 | Escrow change | $1,398.58 | $1,408.41 | 1/1/17 | None |
| 3/27/17 | Escrow change | $1,398.58[5] | $1,406.59 | 5/1/17 | None |

39.    Looking at the chart (*supra*), after January 1, 2016, which is the effective date for the first "stealth" modification payment introduced into the Cottons' bankruptcy by Wells Fargo, there is no way for the debtor, the Chapter 13 Trustee, or the Court to accurately calculate the monthly mortgage payment amounts being asserted by Wells Fargo.[6]

### The November 16, 2015 Notice of Mortgage Payment Change

40.    On Monday, November 16, 2015, Wells Fargo filed a Rule 3002.1 Notice of Payment Change (a Form 410S1 Notice) based upon what Wells Fargo described as a trial mortgage modification.  **Exhibit B**.

41.    The November 16, 2015 PCN *reduced* the Cottons' monthly mortgage payment from $1,404.45 to $1,270.48.  The reason given was, "Proposed modification agreement – trial payments."

42.    The Cottons did not request and were unaware of any modification of their mortgage loan from Wells Fargo prior to November 16, 2015, and they did not authorize Wells Fargo to file the November 16, 2015 PCN.

---

[5] Amount listed as "current"/previous payment amount on escrow account disclosure statement attached to PCN (disregarding payment change indicated by the December 1, 2016 PCN).

[6] This allegation assumes that (but Plaintiffs do not concede and expressly reserve the right to contest whether) Wells Fargo correctly calculated the $1,402.08 initial post-petition payment amount and the $1,404.45 monthly payment amount provided in the March 25, 2015 PCN, because Wells Fargo calculated the $1,402.08 and $1,404.45 payment amounts before filing its first "stealth" modification PCN on November 16, 2015.

43. Nothing in the Cottons' mortgage note or deed of trust, or their Chapter 13 plan, authorizes either the borrower or the lender to unilaterally alter the loan terms.

44. The trial modification payments in the November 16, 2015 PCN were to be made in connection with a modification program that would have resulted in a new 40-year loan term and thus would have extended the Cottons' loan term by nearly 26 years.

45. The disclosure that the proposed modification would result in a new 40-year loan term is buried on page 8 of the 9 page PCN (page 5 of a 6-page letter attached to the PCN) and is not mentioned anywhere else in the PCN.

46. As of January 1, 2016, the purported "effective date" of the new payment provided in the November 16, 2015 PCN, the Cottons had just fourteen years of monthly mortgage payments remaining on their mortgage loan with Wells Fargo.

47. Based on the amortization schedule of the Cottons' unmodified mortgage loan, as of January 1, 2016, the Cottons would have paid approximately $55,593 in interest over the remaining 14 years of their loan at the contract interest rate of 4.875%, and the principal balance as of January 1, 2016 would have been $145,035, assuming all payments were made and applied properly.

48. By extending the loan to 40 years, the Cottons would have had to pay approximately $129,319 in additional interest, assuming the same 4.875% interest rate, or, assuming the modification reduced the interest rate to 3.875%, the Cottons would have had to pay approximately $84,939 in additional interest.

49. The November 16, 2015 PCN attached a "letter," dated Wednesday, November 11, 2015, that Wells Fargo allegedly sent directly to the Cottons, purporting to offer a "cap and

extend" modification.  The November 11, 2015 letter indicates that it is based on a form letter, which was revised in July of 2015, described in the footer as a "FNMA Cap-Extended Modification Trial Solicitation Letter."

50.     The November 11, 2015 modification letter from Wells Fargo stated, falsely: "Recently, you have missed a number of mortgage payments, or made late payments."  **Exhibit B**, p. 1.  It further stated, "We are offering you an option to bring your mortgage account back into good standing and avoid further damage to your credit."  *Id.*

51.     As of November 11, 2015, the Cottons had neither missed payments nor made late payments on their mortgage loan; they already were in good standing on their mortgage loan.

52.     Wells Fargo's November 11, 2015 letter also implied that the Cottons could lose their home if they didn't act to accept the modification:  "By following the steps outlined below, you can begin to restore your mortgage account to good standing.  If you fail to take the following steps and continue to miss or make late mortgage payments, you risk further damage to your credit and possibly foreclosure on your home."  *Id.*

53.     The Cottons' home should not have been in danger of foreclosure, as they had not missed any payments prior to filing the bankruptcy and had made all plan payments that had come due.

54.     The November 11, 2015 letter also stated that the Cottons' credit could be negatively impacted: "If you choose a loan modification, your credit score could be negatively impacted during the Trial Period Plan … During the loan modification process, we are required by law to continue to report the delinquency status of your loan to the credit reporting agencies as 'paying under a partial or modified agreement.'"

55.   The Cottons' credit should not have been impacted negatively with respect to their mortgage loan, as they were performing in accordance with their contractual obligations under their mortgage note and Deed of Trust, and they did not request or consent to a modification.

56.   Wells Fargo's November 11, 2015 letter specifically falsely implies that the Cottons had initiated communications with Wells Fargo to request the modification: "Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary.  You are not obligated to pursue any workout options discussed with us."  *Id.* at p. 1.

57.   Wells Fargo's November 11, 2015 modification letter attached to the November 16, 2015 PCN also repeatedly encourages the Cottons to "take advantage" of the modification: "Even if you are already talking with us about other modification options, we still want you to take advantage of this Cap and Extend Modification" and "you are encouraged to participate in this trial period for a mortgage modification."  *Id.* at p. 2.

58.   However, Wells Fargo's November 11, 2015 modification letter also indicates that the existing loan and loan requirements remain in place during the trial period, that Wells Fargo would hold the trial period payments in an account until sufficient funds are available to pay the oldest delinquent [unmodified contractual] payment, that the trial modification period would not be deemed a waiver of the acceleration of the loan (or foreclosure actions), and would not constitute a cure of default.

59.   Thus, the November 11, 2015 modification letter reflects Wells Fargo's conscious understanding that the trial modification payments, which were for less than the contractual payment amount, would result in a contractual default by the Cottons.

60.    Wells Fargo's November 11, 2015 modification letter also provides that, in order to accept the Cap and Extend Modification offer, the Debtors were obligated to "call us at the phone number listed below on this letter or send in your new trial payment, rather than your normal mortgage payment, no later than 15 calendar days from the date listed at the top of this letter." *Id.* at p. 1.  Wells Fargo's November 11, 2015 modification letter also indicates that the trial modification offer would be revoked if the Cottons did not act within 15 days to accept the modification offer.  *Id.* at p. 2, 3

61.    Neither the Debtors nor Debtors' counsel ever accepted the proposed trial modification.

62.    After the 15-day acceptance deadline in Wells Fargo's November 11, 2015 modification letter expired, Wells Fargo did not withdraw the November 16, 2015 PCN.

63.    Thus, Wells Fargo allowed the PCN to remain on file with the knowledge that (a) payments of the trial modification amounts would not result in a final modification because the Cottons had not accepted Wells Fargo's proposal, and (b) the trial modification payments would create a contractual default because they were less than the contractual monthly mortgage payment amount.

64.    Wells Fargo's November 16, 2015 PCN slipped under the radar: The Chapter 13 Trustee honored Wells Fargo's November 16, 2015 improper stealth modification PCN, lowering Plaintiffs' monthly mortgage payment to the amount listed in the November 16, 2015 Notice of Payment Change effective January 1, 2016, as the November 16, 2015 PCN instructed, making payments to Wells Fargo for four monthly mortgage payments in the lower trial modification amounts.

65.    Thus, Wells Fargo's unilateral stealth modification PCN had the effect of throwing Plaintiffs' mortgage into default and modifying the Cottons' Chapter 13 plan without Court approval or the Plaintiffs' consent.

### The June 27, 2016 Notice of Mortgage Payment Change

66.    On June 27, 2016, Wells Fargo filed a second Rule 3002.1(b) Notice of Payment Change (a Form 410S1 Notice) based upon what Wells Fargo falsely described as an "approved" trial modification "agreement." **Exhibit C**.

67.    The Cottons had not "approved" or "agreed" to any modification of their mortgage loan, notwithstanding Wells Fargo's assertion to the contrary, in the June 27, 2016 PCN.

68.    The June 27, 2016 PCN included a "FNMA Cap-Extend Trial Solicitation Letter," addressed to the Cottons and dated June 13, 2016, which makes several of the same representations that Wells Fargo made in the November 16, 2015 PCN, which are detailed *supra*. *See* **Exhibit C**.

69.    Like the November 11, 2015 trial modification letter attached to the November 16, 2015 PCN, the June 13, 2016 trial modification letter provided that the Cottons had just 15 days to accept the trial modification offer, meaning until June 28, 2016, just one day after Wells Fargo filed the June 27, 2016 PCN.

70.    The Cottons did not accept the trial modification offer contained in the June 27, 2016 PCN and the attached June 13, 2016 trial modification letter.

71.    Rather, debtors' counsel sent an email to Wells Fargo's counsel requesting that Wells Fargo explain the June 27, 2016 PCN.  Wells Fargo's counsel replied, stating:

> **From:** Shannon.E.Hoff@wellsfargo.com [mailto:Shannon.E.Hoff@wellsfargo.com]
> **Sent:** Tuesday, June 28, 2016 4:02 PM
> **To:** Derick Henderson
> **Subject:** RE: Christopher & Allison Cotton, 14-30287

Derick:

Wells Fargo routinely reviews its mortgage accounts to determine if any accounts qualify for a streamline loan modification.  If an account so qualifies, Wells Fargo will send the customer a trial modification offer letter advising that if the customer timely makes three reduced mortgage payments, then the modification will move into the permanent loan modification phase.  The offer is not binding, and the customer may contact Wells and reject the offer.

These streamline loan modification offers are made to customers in bankruptcy as well.  If an offer is made, Wells will file a payment change notice, attaching the offer letter as an exhibit.  The offer is not forced on any customer.  If a customer subsequently advises that he does not want to do a trial loan modification, then Wells will simply withdraw the PCN and mark the account accordingly.

Should a customer in bankruptcy accept and complete the trial modification offer, then prior to any permanent loan modification, Wells would seek bankruptcy court approval.

Please confirm that your clients want to reject the loan modification offer, and I am happy have the PCN withdrawn.

Please let me know if you have any questions.

Thanks,

Shannon

72.    Thus, according to Wells Fargo's in-house counsel, the Cottons were required to *reject* the proposed modification or else Wells Fargo would consider it accepted, contrary to the language in the June 13, 2016 trial modification letter.

73.    Debtors' counsel responded with an email to Wells Fargo's in-house counsel requesting that the June 27, 2016 PCN be withdrawn.  In that email, a copy of which went to the Cottons' Chapter 13 Trustee, debtors' counsel explained in detail the legal and procedural problems Wells Fargo was creating by filing PCNs based on an alleged trial modification:

**From:** Derick Henderson
**Sent:** Tuesday, June 28, 2016 5:12 PM
**To:** 'Shannon.E.Hoff@wellsfargo.com'
**Cc:** Warren Tadlock (warren@ch13clt.com)

PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT                                    18

**Subject:** RE: Christopher & Allison Cotton, 14-30287

Ms. Hoff:

Thank you for your clarifying information.  Please withdraw the Notice of Payment Change.  My clients and I have communicated rejection of this offer prior to Wells Fargo filing the notice.  Even without such rejections, it had been my understanding that the clients had to affirmatively accept such offers.  If Wells Fargo is now assuming acceptance of modification offers unless debtors affirmatively reject, we will certainly have to be on heightened alert.  We can't assume every modification offer is in their best interest long term.

I am not sure I agree with your take on Wells Fargo's recent utilization of the payment change notice.  Filing a notice of payment change is not tantamount to a mere offer or suggestion.  It actually triggers changes to the debtors' Chapter 13 plan based on the appearance of a mutual agreement yet without their consent.   It also appears that it could cause a permanent change to the terms of the debtors' mortgage absent their proactive rejection in the bankruptcy case.

When it comes to accepting offers to modify the terms of the mortgage, it's always been my understanding that the debtors have to actually accept it before any changes are made to their mortgage or Chapter 13 plan.  What's more, even if the debtors accept, they have a responsibility to seek court approval before they can enter modified mortgage agreements and modify their plan.

I've copied Mr. Tadlock to set us straight if he so choses.

My clients have communicated to me their rejection of the offered modification.  It is still their intent to continue rehabilitating their mortgage through their Chapter 13 plan as confirmed.

Thanks again for looking into this and for having Wells withdraw the requested payment change.

Best regards,


**Derick L. Henderson, Esq.**
Sigmon & Henderson, PLLC

74.    Wells Fargo subsequently withdrew the June 27, 2016 PCN, but its counsel never confirmed to the Cottons' bankruptcy counsel whether Wells Fargo would refrain from again filing similar notices.

### *The October 13, 2016 Notice of Mortgage Payment Change*

75.     On October 13, 2016, Wells Fargo filed a *third* stealth modification PCN indicating that the Cottons' monthly mortgage payment would be reduced from $1,398.58 per month to $1,251.09 per month based upon a "proposed" trial mortgage modification agreement.  **Exhibit D**.

76.     Wells Fargo filed this October 13, 2016 notice on its own rather than through counsel.

77.     The PCN attached a modification offer, which included a letter from Wells Fargo, dated October 11, 2016,[7] that was addressed to the Cottons' bankruptcy counsel.  *See* **Exhibit D**. The October 11, 2016 modification offer letter to the Cottons' counsel also asserted that counsel "must" pass Wells Fargo's modification offer along to Plaintiffs.  *Id.*

78.     Like the previous modification letters, Wells Fargo's October 11, 2016 modification "offer" attached to the PCN includes several false and misleading statements.  For instance, in bold letters at the top of the modification offer it states: "make 3 trial payments to modify your mortgage."  *Id.*   That statement is misleading because, as Wells Fargo doesn't explain in detail until page 5, completion of the trial modification does not obligate Wells Fargo to modify the loan. *Id.*   The modification offer also falsely states, repeatedly, that Plaintiffs' mortgage loan was seriously in delinquent and at risk of foreclosure:  "As a Wells Fargo Home Mortgage customer you matter to us, and we want to help you.  Your mortgage is seriously delinquent."  *Id.* at p. 1.

---

[7] The letter to Plaintiffs' counsel is dated just two days prior to the filing of the PCN, making it virtually impossible for Plaintiffs' bankruptcy counsel to have a meaningful conversation with Plaintiffs about the potential impact of the modification offered by Wells Fargo.

"You can stay in your home and modify your mortgage…" *Id.* "Please understand that if I do not hear from you by October 25, 2016, foreclosure activities will proceed." *Id.* at p. 4.

79.     On November 4, 2016, the Cottons filed an objection to the October 13, 2016 Notice of Mortgage Payment Change.  **Exhibit E.**

80.     Following the filing of Plaintiffs' objection, the Court held a series of hearings on the Cottons' objection to the October 13, 2016 PCN, in which the Court also considered similar objections filed by several other debtors whose cases had been impacted by similar unauthorized stealth modifications hidden in Wells Fargo's PCNs.

81.     Over the course of these hearings, it has become clear that Wells Fargo's filing of these PCNs is the product of a conscious policy decision by Wells Fargo to use the Rule 3002.1 payment change notice process as a means to place Chapter 13 bankruptcy debtors into trial modification plans without their prior knowledge or consent.

## VI.  CLASS ALLEGATIONS

82.     On information and belief, Wells Fargo is filing illegal stealth Rule 3002.1 notices containing "trial-modifications" in bankruptcy courts across the country.

83.     Wells Fargo does so, on information and belief, so that Wells Fargo can enrich itself through incentive payments by the U.S. government under one or more "streamline" loan modification programs, and for millions of dollars Wells Fargo will collect in additional interest and servicing fees.

84.     Similarly, upon information and belief, Wells Fargo is subject to a variety of settlement agreements and/or consent decrees with various state and federal agencies, which require Wells Fargo to provide mortgage relief to its customers in order to avoid or limit fines that

Wells Fargo would otherwise be required to pay in cash.  Thus, Plaintiffs allege upon information and belief that Wells Fargo was motivated to use the Rule 3002.1 payment change notice process to force stealth modifications upon its unsuspecting Chapter 13 debtor customers.

85.    Wells Fargo has previously been admonished for engaging in this same practice, in the United States Bankruptcy Court for the Western District of Pennsylvania.

86.    In *In re Eyer*, the bankruptcy court entered an order striking a similar notice of mortgage payment change because the notice had "nothing to do with the [d]ebtor's current obligations under its note and/or mortgage with Wells Fargo."  *In re Eyer,* Case No. 12-70985, Memorandum Order Striking Notice of Payment Change, Docket No. 93 (Bankr. W.D. Penn. Dec. 30, 2015).  **Exhibit F**.  The court also noted that such a procedure was not appropriate for trial modifications, and required the filing of a motion to "insure that such items are not merely entered into by default – and without meaningful opportunity for debtors to seek guidance and counsel from their attorneys..." *Id.*

87.    Further, this Court has previously entered an order in *In re Allen* deeming this same practice "beyond the pale of due process."  *In re Allen*, Case No. 13-31034, Order Sustaining Objection to Notice of Mortgage Payment Change, Docket No. 29 (Bankr. W.D. N.C. Sept. 19, 2016).[8]

88.    Worse still, Wells Fargo has admitted to engaging in this process at least one hundred times in this Court alone.  *See* **Exhibits G & H**.

---

[8] This Court has also entered an order sustaining a debtor's objection to a similar notice of mortgage payment change and required Wells Fargo to pay the debtor's counsel's fees incurred for filing the objection.  *See, In re Roman*, Case No. 15-31462, Order Sustaining Objection to Notice of Mortgage Payment Change, Awarding Fees and Expenses to Debtor's Counsel to be Paid by Wells Fargo, and Setting Compliance Hearing for October 25, 2016, Docket No. 34 (Bankr. W.D. N.C. Oct. 14, 2016).

89.     Plaintiffs' counsel are also aware of other cases in the United States Bankruptcy Court for the Southern District of Texas where Wells Fargo has engaged in the same practice of filing notices of mortgage payment change for unsolicited and unaccepted trial modification offers, and Wells Fargo is being sued for that conduct in *Perez v. Wells Fargo Bank, N.A.*, Case No. 16-01008, in the United States Bankruptcy Court for the Southern District of Texas.[9]

90.     Wells Fargo's "stealth modifications" are systemically harmful, to the purposes and administration of Chapter 13 bankruptcy in this country.  As a result of Wells Fargo's Rule 3002.1(b) payment change notices, debtors become contractually delinquent post-petition under the terms of their not-yet-modified mortgage loan and their plan, in an amount equal to the difference between the "trial" payment and the regular contractual payment amounts the debtors are responsible to make under the terms of their unmodified mortgage loan and their plan.

91.     Likewise, the clandestine manner in which Wells Fargo forces debtors into uninvited and often unconscionable loan modifications abuses the bankruptcy process by denying debtors' counsel an opportunity to evaluate the reasonableness of the proposed loan modification or advise their clients about the effects of such modifications.

92.     Further, Wells Fargo's stealth modification PCNs are unfair to both the debtor and debtors' counsel.  By filing these Rule 3002.1(b) payment change notices, Wells Fargo is forcing debtors and/or their counsel to take affirmative action in order to avoid changes to their mortgage loans that they never requested.  As such, Wells Fargo is creating uninvited and unnecessary work and risk for debtors and/or their counsel, which results in a practical and financial burden on debtors and their lawyers to take the time to address these payment change notices, which

---

[9] Plaintiffs are excluding the Plaintiffs in *Perez* from this class because that lawsuit was filed prior to the filing of this class action complaint.

generates unnecessary attorneys' fees (and potential malpractice exposure for debtors' attorneys) as a result.

93.     This practice also creates additional work for Chapter 13 Trustees in conduit jurisdictions, whose offices now must carefully scrutinize PCNs to prevent unapproved and unwanted stealth modifications from being implemented automatically.  This is the opposite of the intended purpose of Rule 3002.1, which was implemented to provide a streamlined and uniform mechanism for acknowledging and processing ordinary changes to monthly mortgage payment amounts, such as  for routine escrow and interest rate adjustments.

94.     Because Wells Fargo's wrongful conduct is widespread and uniform, this case should be certified for class action treatment pursuant to Fed. R. Bankr. P. 7023(a) and 7023(b)(2) and (3).

95.     The class Plaintiffs seek to represent consists of all individuals in the United States[10]:

- who currently are in a Chapter 13 bankruptcy case or were formerly in a Chapter 13 bankruptcy case;

- as to whom Wells Fargo owns or services their mortgage loan;

- as to whom Wells Fargo filed a Rule 3002.1(b) Notice in their bankruptcy case pursuant to an alleged trial modification, and the bankruptcy court has not already entered an order approving a trial mortgage loan modification or a permanent mortgage loan modification.

96.     The class does not include the Judges of this Court, the Judges of the United States

---

[10] This suit excepts from the class the plaintiffs in the *Perez v. Wells Fargo Bank, N.A.*, whose case is filed in the United States Bankruptcy Court for the Southern District of Texas.

Courts of Appeals, or the Justices of the United States Supreme Court.

97.   <u>Numerosity</u> – The class is so numerous, with class members throughout the country, that joinder of all class members is impracticable.  A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result.  Wells Fargo has already admitted to engaging in this practice at least 100 times in cases that were pending as of April 24, 2017 in this district alone.  Plaintiffs' counsel is also aware of instances where Wells Fargo has engaged in this conduct in Pennsylvania, Texas, New Jersey, and Louisiana.  Thus, the number of putative class members that have already been identified is sufficient to satisfy the numerosity element of Rule 7023, and there are likely many more unidentified putative class members throughout the country.

98.   <u>Commonality</u> – The questions of law and fact common to all class members that predominate over those pertaining to individual class members include, but are not limited to, whether Wells Fargo engaged and engages in the policies and practices complained of and whether such actions violate the Bankruptcy Code and Rules, and other federal law as alleged.  Specifically, the common question is whether Wells Fargo's practice of filing PCNs pursuant to Rule 3002.1 that provide for modification of a consumer debtor's mortgage loan without notice to the consumer or approval of the courts, constitutes an abuse of process.  A common fact is Wells Fargo's filing of PCNs that provide for stealth modifications that have not been previously requested by the consumer or approved by the Bankruptcy Courts.

99.   <u>Typicality</u> - Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.  The Plaintiffs have been subjected to the same misconduct as the members of the proposed class.

PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT                                        25

100.   <u>Adequacy of representation</u> – Plaintiffs will fairly and adequately protect the interests of all class members.  To that end, Plaintiffs have retained capable counsel experienced in state and federal consumer law and consumer class-action litigation, and consumer bankruptcy law class-action litigation.  Neither Plaintiffs nor their counsel have any conflicts that would interfere with the vigorous prosecution of this action.

101.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy in that:

(a) the class necessarily consists of persons in unfavorable economic circumstances who are not able to pay to maintain individual actions against Wells Fargo,

(b) many class members lack the sophistication to recognize that Wells Fargo's actions are unlawful and to retain litigation counsel,

(c) many class members have acceded or will accede to Wells Fargo's unlawful conduct, and

(d) there is no reason that the courts should be burdened with multiple lawsuits challenging Wells Fargo's practices.

102.   Finally, Plaintiffs would show the Court that Wells Fargo, in pursuing the procedures challenged herein, has acted and refused to act on grounds generally applicable to the class as a whole.

## VII.  <u>CAUSES OF ACTION</u>

### COUNT I
### (VIOLATION OF FED. R. BANKR. P. 3002.1)

103.   Plaintiffs repeat and reallege the allegations in this complaint.

104.   As described in this complaint, Wells Fargo is using Rule 3002.1 in an outrageous

and damaging manner.

105.     Wells Fargo's abuse of Fed. R. Bankr. P. 3002.1(b) has damaged Plaintiffs and

caused them to incur attorneys' fees.

106.     Wells Fargo's conduct as described herein is part of a general pattern and practice

of conduct by Wells Fargo expressly authorized by Wells Fargo's policies and procedures.

107.     Pursuant to Fed. R. Bankr. P. 3002.1(i), Wells Fargo's failure to comply with Fed.

R. Bankr. P. 3002.1(b) allows the Court, after notice and hearing, to award Plaintiffs appropriate

relief, including actual damages, punitive damages, reasonable expenses, and attorneys' fees

caused by Wells Fargo's abuse of Rule 3002.1. *In re Gravel*, 556 B.R. 551 (Bankr. Vt. 2016).

108.     Plaintiffs respectfully pray the Court award them and the class such relief.

## COUNT II
## (OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE)

109.     Plaintiffs repeat and reallege the allegations in this complaint.

110.      Plaintiffs have filed an objection to Wells Fargo's 3002.1 Notice at Bankruptcy

Docket No. 25.[11] Plaintiffs incorporate their objection herein by this reference.

111.     Plaintiffs object to the 3002.1 Notice to the extent that it attempts to lower their

monthly mortgage payment based on an alleged trial modification agreement that Plaintiffs did not

agree to or request.

112.     Plaintiffs respectfully request that the Court sustain Plaintiffs' objection to Wells

Fargo's 3002.1 Notice.

---

[11] On December 29, 2016, the Court entered an order ruling that Plaintiffs' objection to Wells Fargo's Rule 3002.1 Notice will be decided in this Adversary Proceeding.

## COUNT III
## (VIOLATION OF THE AUTOMATIC STAY)

113.    Plaintiffs repeat and reallege the allegations in this complaint.

114.    Wells Fargo's actions in this case constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3) and (6).

115.    Wells Fargo had actual knowledge that Plaintiffs were debtors in a pending Chapter 13 case and that the automatic stay was in effect at the time it took the actions described herein.

116.    Wells Fargo violated the automatic stay by communicating with, or attempting to communicate with, Plaintiffs directly regarding a loan modification without obtaining relief from the automatic stay or the consent of Plaintiffs' counsel.

117.    Wells Fargo violated the automatic stay by unilaterally modifying loans and thereby frustrating the Trustee's administration of the Plaintiffs' Chapter 13 plan.

118.    Wells Fargo's conduct as described herein is part of a general pattern and practice of conduct by Wells Fargo, which is either expressly authorized by, or not specifically prohibited by, their policies and procedures.

119.    Plaintiffs and the members of the class were injured by Wells Fargo's violation of the automatic stay as set forth in this complaint.

120.    Wells Fargo's acts constitute willful violations of the automatic stay.  Wells Fargo knew the automatic stay was applicable to Plaintiffs and the members of the class, its actions were intentional, and the acts alleged herein violated the provisions and purposes of the Bankruptcy Code.

121.    As a result of the above violations of 11 U.S.C. § 362, and pursuant to 11 USC § 362(k), the Bankruptcy Code, the Court's inherent powers, and its authority to enforce provisions

of the Bankruptcy Code pursuant to 11 U.S.C. § 105, Wells Fargo is liable to Plaintiffs and the class

for their actual damages, punitive damages, and reasonable attorneys' fees and costs resulting from

Defendant's willful stay violations.

### COUNT IV
### (11 U.S.C. § 105 (a) ABUSE OF PROCESS/INHERENT AUTHORITY)

122.    Plaintiffs repeat and reallege the allegations in this complaint.

123.    As set forth in detail *supra*, Wells Fargo's efforts to compel borrowers in bankruptcy

to "accept" its unauthorized loan modifications via the Rule 3002.1(b) payment-change notice

process constitutes an extreme and gross abuse of the Bankruptcy Code, Bankruptcy Rules, and of

Chapter 13 bankruptcy processes.

124.    Wells Fargo furthers its scheme by sending emails to debtors' counsel with false

and misleading statements, with the intention of obtaining direct access to debtors to convince

them into accepting unfavorable loan modifications without the advice of their bankruptcy counsel.

125.    Plaintiffs and the class have been damaged by Wells Fargo's abuse of the

Bankruptcy Code, Rules, and processes, and has caused them to incur attorneys' fees.

126.    Accordingly, Plaintiffs ask this Court to find that Wells Fargo's actions constitute

an abuse of process.

127.    Title 11 U.S.C. § 105(a) of the Code grants power to the Court to remedy Wells

Fargo's violations of numerous sections of the Bankruptcy Code and Rules and its abuse of process.

Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to

facilitate implementation of Code and Rule provisions, including the granting of sanctions for

contempt, the granting of monetary relief for actual damages, punitive damages, attorneys' fees

and costs, and the imposition of temporary and permanent injunctions. Based upon such findings,

and under its inherent powers and 11 U.S.C. § 105(a), Plaintiffs seek an award of sanctions and/or punitive damages, declaratory and injunctive relief, actual damages, and attorneys' fees and costs.

128.    Accordingly, under § 105 and/or the Court's inherent authority, Defendants should be sanctioned in an appropriate amount and made to pay Plaintiffs' reasonable attorneys' fees for bringing this action.

## COUNT V
## (CONTEMPT)

129.    Plaintiffs repeat and reallege the allegations in this complaint.

130.    As outlined in the preceding counts and the preceding factual allegations, Wells Fargo has violated and breached Plaintiffs' Chapter 13 plan and order confirming the plan.

131.    Title 11 U.S.C. § 1322(b)(5) allows a Chapter 13 debtor to cure deficiencies and maintain regular monthly mortgage payments.  Section 1327 of Title 11 of the United States Code provides as follows: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

132.    Plaintiffs' confirmed Chapter 13 plan contains specific provisions regarding the amount and application of funds received from both the Chapter 13 Trustee and the Plaintiffs during the pendency of their Chapter 13 case.  By filing Rule 3002.1(b) PCNs instructing the Trustee to apply funds earmarked for Plaintiffs' post-petition mortgage payments in a manner that would prevent Plaintiffs' mortgage loan from becoming current upon emerging from bankruptcy, Wells Fargo violated §§ 1322(b)(5) and 1327, and other provisions of the Code and Rules, the Plaintiffs' Chapter 13 plan, and the order confirming the plan.

133.    Wells Fargo's acts were a willful abuse of the Bankruptcy Code and Rules.  Wells

Fargo knew of the existence of these provisions, its acts were intentional, and the acts alleged herein violated the provisions and purposes of the Code and Rules.

134.    The actions of Wells Fargo show that it is its policy and procedure to ignore the directives of the nation's bankruptcy courts and the Bankruptcy Code and Rules.

135.    Accordingly, Plaintiffs ask this Court to find Wells Fargo in contempt, and in violation of the Bankruptcy Code's and Rules' provisions and their purposes pursuant to the Court's inherent powers and pursuant to its powers under 11 U.S.C. § 105(a). Plaintiffs also ask that the Court use its inherent and statutory powers to award sanctions and actual damages, punitive damages, including attorneys' fees and costs, and issue injunctive relief.

## COUNT VI
## (FRAUD ON THE COURT)

136.    Plaintiffs repeat and reallege the allegations in this complaint.

137.    Wells Fargo made material representations in its 3002.1 Notice to Plaintiffs, the Court, the Chapter 13 Trustee, and all of the Plaintiffs' creditors.

138.    Wells Fargo falsely represented in its 3002.1 Notice that Plaintiffs' mortgage payments had changed based on trial modifications that Plaintiffs had not requested.

139.    Wells Fargo falsely represented that Plaintiffs were in default when they were not.

140.    Wells Fargo's false representations in its 3002.1 Notice were material because they either did in fact cause, or would have, but for the diligence of Plaintiffs' counsel, caused Plaintiffs' Chapter 13 bankruptcy plans to be modified without Court approval or Plaintiffs' consent.

141.    Wells Fargo's false representations in its 3002.1 Notice were material because they either did in fact cause, or would have, but for the diligence of Plaintiffs' counsel, caused Plaintiffs to go into default under the unmodified terms of their mortgage loans.

142.   When Wells Fargo made its material representations to the Court, it (i) knew that the material representations were false, or (ii) made the material misrepresentations recklessly without any knowledge of their truth and as a positive assertion.

143.   Wells Fargo filed and served the 3002.1 Notices with the knowledge and intent that they would be acted upon by the Chapter 13 Trustee and the Court. Indeed, Wells Fargo filed the 3002.1 Notices expecting that the Chapter 13 Trustee would automatically make the lower monthly payment and thus force Plaintiffs into a loan modification that Plaintiffs had not requested and did not want, which would be economically harmful to them.

144.   The Plaintiffs, the Court, other participants in the bankruptcy process, and the bankruptcy process have been damaged by Wells Fargo's fraud on the Court.

145.   The Court can, and should, use its inherent and 11 U.S.C. § 105 authority to sanction Defendant Wells Fargo for its fraudulent conduct.

## COUNT VII
## (BREACH OF CONTRACT)

146.   Plaintiffs repeat and reallege the allegations in this complaint.

147.   The notes and deeds of trust and/or mortgages for the Plaintiffs' mortgage loans constitute contracts among Plaintiffs and the owners of those loans.

148.   Plaintiffs tendered performance according to the terms of the contract, including pursuant to the terms of their Chapter 13 bankruptcy plans.

149.   Defendant breached the Plaintiffs' mortgage loan contracts by filing 3002.1 Notices that caused the Chapter 13 Trustee to make monthly mortgage payments in amounts that are insufficient to satisfy Plaintiffs' post-petition contractual mortgage payments.

150.   Plaintiffs have incurred actual damages and attorneys' fees as a result of

Defendant's breaches of their mortgage loan contracts.

151.     Plaintiffs are entitled to recover their actual damages and attorneys' fees for Defendant's breaches of their mortgage loan contracts, and request that the Court award the same.

## COUNT VIII
## (NORTH CAROLINA UNFAIR DECEPTIVE TRADE PRACTICES ACT "UDTPA")

152.     Plaintiffs repeat and realleged the allegations in this complaint.

153.     Wells Fargo's conduct as described herein violates the UDTPA of § 75-1.1 of the North Carolina General Statutes.

154.     Wells Fargo's conduct as described above is unfair to Plaintiffs, and Wells Fargo's practice of filing PCNs for unapproved "stealth" modifications is extremely deceptive.

155.     Wells Fargo's actions as described herein affect commerce.

156.     Plaintiffs have been damaged by Wells Fargo's conduct, and have incurred actual damages and attorneys' fees.

## COUNT IX
## (ATTORNEYS' FEES)

157.     Plaintiffs repeat and reallege the allegations in this complaint.

158.     Through the conduct described herein, Wells Fargo has inflicted actual damages upon Plaintiffs by violating the Plaintiffs' Chapter 13 plan, Rule 3002.1, and the Bankruptcy Code and Rules as described herein.

159.     Moreover, Plaintiffs have been forced to retain legal counsel, who have incurred reasonable and necessary attorneys' fees on their behalf.  Such fees are properly taxed against Wells Fargo by virtue of Wells Fargo's flagrant violations of the Chapter 13 provisions of the Code, Fed. R. Bankr. P. 3002.1, Plaintiffs' Chapter 13 plan, and Wells Fargo's gross abuse of the bankruptcy

process.  The Court may, and on these facts the Court should, award Plaintiffs their attorneys' fees

as against Wells Fargo pursuant to the Court's inherent and § 105(a) authority.

## VII.  REQUEST FOR DECLARATORY RELIEF

160.    Plaintiffs repeat and reallege the allegations in this complaint.

161.    As outlined in the preceding counts and the preceding factual allegations, Wells

Fargo has violated Fed. R. Bankr. P. 3002.1 and 4001(c), and 11 U.S.C. §§ 362, 364, 1322(b)(5),

1327, and 1329, and has committed a gross abuse of process.  Plaintiffs seek a declaration that Wells

Fargo's conduct as described herein violates 11 U.S.C. §§ 364, 1322(b)(5), 1327, and 1329, Fed. R.

Bankr. P. 3002.1 and 4001(c), and constitutes a gross abuse of process.

## VIII.  REQUEST FOR PRELIMINARY INJUNCTION

162.    Plaintiffs repeat and reallege the allegations in this complaint

163.    Plaintiffs and the class are entitled to a preliminary injunction, pursuant to Fed. R.

Civ. P. 65 and 11 U.S.C. § 105(a), enjoining Wells Fargo from engaging in the acts and practices

described herein, enjoining Defendant from

- filing any new Rule 3002.1 Notices that purport to change Plaintiffs' and the class members' monthly mortgage payments for any mortgage loan modification that has not already been approved by the class members' bankruptcy courts;

- implementing any purported "loan modifications," trial or permanent, for which Wells Fargo filed a Rule 3002.1 notice, unless the class member has obtained bankruptcy court approval for such modification;

- foreclosing on Plaintiffs' or class members' homes;

PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT                                    34

- sending false and misleading communications to class members regarding trial and permanent modifications; and

- making false assertions to class members' attorneys through email or otherwise.

164.    Plaintiffs assert that Wells Fargo will continue to wrongfully file Rule 3002.1 Notices for trial modifications not approved by bankruptcy courts and force class members into ruinous loan modifications without their consent and in direct violation of multiple bankruptcy laws and rules.

165.    There is a substantial likelihood that Plaintiffs will prevail on the merits, as the Court has already sanctioned Wells Fargo for this conduct.  See also *Campbell v. Countrywide Home Loans, Inc. (In re Campbell)*, 545 F.3d 348, 356 n. 1 (5th Cir. 2008).   This Court, as well as bankruptcy courts in New Jersey and Pennsylvania, have already disapproved of Wells Fargo's filing of these stealth modifications, and nothing in the Bankruptcy Code or Rules suggests that Wells Fargo's filing of these PCNs is permissible.

166.    The harm faced by the Plaintiffs and the class outweigh any "harm" that will be sustained by Wells Fargo if the preliminary injunction were granted.  The panoply of the harms to debtors (and the entire bankruptcy system) are described above.  These far outweigh Wells Fargo's interest in profiting through illegal loan modifications.

167.    Issuing a preliminary injunction will not adversely affect the public interest but rather will enhance it.  Wells Fargo's actions eviscerate the purposes of the Bankruptcy Code and the administration of Chapter 13 proceedings, which are intended to provide the debtors the ability to cure their arrearages and receive a "fresh start" after the successful completion of their plans. Wells Fargo's actions broadcast (again) its perception that it has impunity for conduct that overtly

disobeys the provisions of the United States Bankruptcy Code and court orders. Wells Fargo's actions erode public confidence in the bankruptcy courts' ability to ensure that debtors receive the "fresh start" they earn by completing their three-to-five-year Chapter 13 plan payments, a process that requires extreme sacrifice on their part.

168.    The public has the right to expect that the courts will enforce the provisions of the Bankruptcy Code and will not allow lenders to illegally undermine and even destroy debtors' right to successfully complete their Chapter 13 plans and cure their mortgage arrears through their Chapter 13 plan. Even though the Court should balance the threatened injury to Plaintiffs against any harm to the defendant, when balancing the hardships of the public interest against a private interest, the public interest should receive greater weight. *See FTC v. World Wide Factors*, 882 F.2d 344, 346-47 (9th Cir. 1989). The substantial adverse effects of Wells Fargo's illegal stealth modification PCNs militate strongly in favor of this Court issuing a preliminary injunction.

169.    The posting of a bond is not a prerequisite to the issuance of a preliminary injunction in this case because Wells Fargo cannot demonstrate that preserving the *status quo* will cause it cognizable economic harm. *See FTC v. Southwest Sunsites, Inc.*, 665 F. 2d 711, 714 n.1 (5th Cir. 1982) (ruling that a temporary restraining order or preliminary injunction may be granted without bond). Wells Fargo's filing of the improper stealth modification PCNs alters the *status quo*. The Plaintiffs' and class members' plans created a *status quo* whereby the Plaintiffs and the class members address their mortgage deficiency through their plans and orders confirming their plans. The *status quo* is the Bankruptcy Code and Rules, and the class members' proposed and confirmed Chapter 13 plans, which require that debtors obtain bankruptcy court approval prior to obtaining credit. Since the Plaintiffs and class members are continuing to attempt to pay pursuant

to their plans, the posting of security is unnecessary.

170.   In addition, or alternatively, the Court can issue a preliminary injunction to prevent Wells Fargo from taking the actions Plaintiffs and the class seek to enjoin based on its 11 U.S.C. § 105(a) authority.  Plaintiffs and class members therefore request that the Court use its 11 U.S.C. § 105(a) authority to issue a preliminary injunction enjoining Wells Fargo from engaging in the acts set forth above during the pendency of this case.

171.   Plaintiffs ask the Court to set this application for preliminary injunction for hearing if the parties are unable to agree to a preliminary injunction and, after hearing the request, issue a preliminary injunction against Wells Fargo enjoining it from the actions set out above.

## IX. REQUEST FOR PERMANENT INJUNCTION

172.   Plaintiffs reallege and incorporate by reference the above-numbered paragraphs.

173.   Plaintiffs and the class are entitled to an injunction permanently enjoining Wells Fargo from engaging in the acts and practices above as to any person who is a member, or could become a member, of the class of persons described in this suit.

## X.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer these allegations and that, upon final trial of this cause, they be granted all relief to which they are justly entitled, including:

    a.   Certification of the class of Chapter 13 debtors who have been subjected to Rule 3002.1 payment change notices proposing unauthorized trial modifications;

    b.   All actual damages, including attorneys' fees and costs (at trial and on appeal) to which Plaintiffs are entitled;

    c.   All compensatory damages to which Plaintiffs are entitled, including attorneys' fees

and costs, exemplary damages, and/or punitive damages and sanctions for
Defendant's actions as described herein, and a finding of contempt;

d.   A declaration that Defendant's actions violate 11 U.S.C. §§ 364, 1322(b)(5), 1327,
and 1329, Fed. R. Bankr. P. 3002.1 and 4001(c), and constitute a gross abuse of the
bankruptcy process;

e.   An injunction preventing Defendant from engaging in the conduct described herein
and requiring Defendant to restore the Plaintiffs' and class members accounts to
*status quo ante*, as though no unauthorized 3002.1 PCN had been filed; and

f.   All such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Theodore O. Bartholow III ("Thad")*
Theodore O. Bartholow III ("Thad")
Texas State Bar No. 24062602
O. Max Gardner III
N.C. State Bar No. 6164
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

*/s/ Frederick Henderson*
Wayne Sigmon, NC Bar #7318
Frederick L. Henderson, Jr., NC Bar #43586
Sigmon & Henderson, PLLC
518 South New Hope Road
Gastonia, North Carolina 28054
p: (704) 865-6265 / f: (704) 874-1300

*Attorneys for the Plaintiffs*